UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
MARLA SAUSA,

                           Plaintiff,

                 -against-

VILLAGE OF WEST HAMPTON DUNES; GARY
VEGLIANTE, MAYOR OF THE VILLAGE OF
WEST HAMPTON DUNES; ROBERT KALFUR,
BUILDING INSPECTOR FOR THE VILLAGE OF
WEST HAMPTON DUNES; JOSEPH PROKOP,
VILLAGE ATTORNEY FOR THE VILLAGE OF
WEST HAMPTON DUNES; JOHN AND JANE DOES
#1-10 EMPLOYEES/AGENTS OF THE VILLAGE
OF WEST HAMPTON DUNES,

                          Defendants.
------------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
CV 18-3802 (SJF)(AYS)

**ANNE Y. SHIELDS, United States Magistrate Judge:**

       Before the Court, on referral from the Honorable Sandra J. Feuerstein for report and

recommendation, are Defendants' motions to dismiss Plaintiff's Complaint, pursuant to Federal

Rule of Civil Procedure 12(b)(6).  One motion is brought by Defendants the Village of

Westhampton Dunes, incorrectly sued herein as the Village of West Hampton Dunes, (the

"Village"), Robert Kalfur ("Kalfur"), and Gary Vegliante ("Vegliante") (collectively, the

"Village Defendants"); the other is brought by Defendant Joseph Prokop ("Prokop").  For the

reasons set forth below, this Court respectfully recommends that Defendants' motions be granted

in part and denied in part.

<u>BACKGROUND</u>

       The facts set forth below are those set forth in Plaintiff's complaint.  As discussed below,

they are accepted as true for the purposes of this motion.

In or around August 2013, the Plaintiff, Marla Sausa ("Sausa" or "Plaintiff"), purchased a parcel of real property located at 895 Dune Road in Westhampton Dunes, New York (the "Property"). (Compl. ¶ 30.) Plaintiff purchased the property with the intention of demolishing the existing structures and constructing a new single-family summer home (the "Project"). (Id. ¶ 31.) Because the Property is located within a flood zone, any structure built on the Property must be designed and constructed to resist the effects of flood hazards. (Id. ¶¶ 32-33.)

On or about June 18, 2014, Plaintiff submitted a building permit for the Project to the Village's Building Inspector, Defendant Kalfur. (Id. ¶ 34.) Kalfur issued a building permit for the Project on or about June 23, 2014. (Id. ¶ 35.)

Construction on the Project began in or around July 2014. (Id. ¶ 36.) During the course of construction, Plaintiff became concerned that the Project was not in compliance with many required safety provisions. (Id. ¶ 5.) Plaintiff sought assistance from Kalfur regarding her concerns. (Id. ¶¶ 5, 40.) Plaintiff went to Kalfur to obtain a copy of the building file for her Project but was told that none existed. (Id. ¶¶ 40-41.) When Plaintiff asked Kalfur about inspection reports, he advised her that he periodically goes on site with the Project drawings and a highlighter. (Id. ¶ 42.) Plaintiff inquired from Kalfur as to why the Project drawings did not contain certain structural connectors – i.e., high-wind resistant hold-downs, tiedowns and strappings to transmit the uplift forces from the roof to the foundation; Kalfur responded that the contractor told him that they were installed so he took his word for it. (Id. ¶ 43.) When Plaintiff questioned Kalfur about how he dealt with a conflict between construction plans or drawings and what was actually visible, Kalfur stated that he accepts the contractor's word that the construction needed to deviate from the plans. (Id. ¶ 45.) Plaintiff also asked Kalfur about

compliance with building codes; Kalfur responded that he trusts the contractor will comply.  (Id. ¶ 46.)

In March 2015, Kalfur advised Plaintiff that no permits were required from the New York State Department of Environmental Conservation ("DEC") and that all work permits were in place for her to proceed with the Project.  (Id. ¶ 47.)  Attempting to verify that the Project complied with all building codes, Plaintiff reached out to various agencies, including the Department of State ("DOS").  (Id. ¶ 48.)  In response to Plaintiff's concerns, the DOS met with officials from the Village on March 31, 2015.  (Id. ¶ 49 and Ex. 1,[1] annexed thereto, Docket Entry ("DE") [1-1].)

By letter addressed to Kalfur dated April 14, 2015, the DOS memorialized the meeting that took place between Kalfur, Defendant Vegliante, who was the Mayor of the Village at the time, and the DOS "to discuss enforcement of the Uniform Code with respect to a residence under construction that is located at 895 Dune Road, Village of Westhampton Dunes."  (Id. ¶ 50 and Ex. 1, DE [1-1].)  The DOS stated in its April 14, 2015 letter that although it was informed that the Project was a "new three story single family dwelling designed and constructed under the provisions of the 2010 Residential Code of New York State (RCYNS)," upon "review of the building plans provided . . . at the meeting, it was discovered that the building in question is actually a four-story building not regulated by the RCNYS."  (Compl. ¶¶ 51, 58 and Ex. 1, DE [1-1].)  As a result, the construction was required to be regulated pursuant to the Building Code of New York State (BCNYS).  (Compl. ¶ 58 and Ex. 1, DE [1-1].)  The letter went on to state

---

[1] While there are exhibit letters identified in the Complaint, the exhibits attached to the Complaint are not labeled and do not appear to correspond to the exhibit letters listed in the Complaint.  Accordingly, the Court will refer to the exhibits attached to the Complaint by numbers, starting in chronological order with number 1, as well as their corresponding docket numbers.

that within a few days of the March 31, 2015 meeting, the DOS was "informed that a number of large propane tanks may have been installed as close as 2 feet from property lines." (Compl. ¶ 52 and Ex. 1, DE [1-1].) Finally, the April 14, 2015 letter states that during a telephone conversation with the DOS, Kalfur verified that "there were at least 4 or 5 [propane tanks] that [he] approved to be installed close to the property line." (Compl. ¶¶ 53, 59 and Ex. 1, DE [1-1].)

On June 8, 2015, the DOS emailed Plaintiff, advising that the Village had not yet responded to its request for a plan of action "to address the many Code violations that they have allowed to take place." (Compl. ¶ 54 and Ex. 2, annexed thereto, DE [1-2].) The email further stated that "[t]here is no doubt that [Plaintiff's] building, as constructed, as well as others, are 4 Story Structures, which are classified as R-3 occupancies and have to be regulated under the provisions of the [BCNYS]." (Compl. ¶ 55 and Ex. 2, DE [1-2].) The June 8, 2015 email went on to state that "the Village has not addressed the buried LP gas tanks located close to property lines," remarking that "[i]t would be in the Village's best interest to address this situation as soon as possible before something catastrophic happens." (Compl. ¶ 56 and Ex. 2, DE [1-2].)

The DOS emailed Plaintiff again on June 17, 2015, advising her that its Director of Codes Division had sent a follow-up letter to the Village Mayor – Vegliante – on May 8, 2015, "request[ing] a response from the Village as to what plan of action they would be taking to rectify the Code violations that they have allowed to take place." (Compl. ¶ 57 and Ex. 2, DE [1-2].) The DOS advised Plaintiff that they had to yet to receive a response from the Village. (Ex. 2, DE [1-2].)

On August 17, 2015, the Village, through its Village Attorney, Defendant Prokop, provided the DOS with its letter response regarding a plan of action. (Ex. 5, annexed to Compl., DE [1-5].) By email dated August 31, 2015, the DOS responded to the Village's request for a

meeting via a conference call to be held on September 3, 2015.  (Id.)  The DOS stated in its
email response that it "strongly disagree[d]" with certain assertions made in [Prokop's] August
17 letter regarding the [DOS's] involvement in what [Prokop] call[ed] 'this process.'"  (Id.)  The
DOS advised the Village that it "'initiated' this process because the Department received a
complaint from the owner of a building in the Village, and that complaint gave the [DOS] reason
to believe that the Village may have applied the wrong provisions of the State Uniform Fire
Prevention and Building Code (Uniform Code) to the complainant's building."  (Compl. ¶ 61;
Ex. 5, DE [1-5].)  The DOS went on to inform the Village that is "is not 'allowing' its offices to
be used by the property owner as 'leverage' in a private dispute," which was what Prokop
alleged to be occurring.  (Compl. ¶¶ 60, 63; Ex. 5, DE [1-5].)  Finally, the DOS's email response
requested that the Village "recognize the serious nature of the issues involved," as well as the
"need for the Village to take the steps required to address dangerous conditions which may now
exist in the Village and to prevent similar conditions from arising in the future."  (Compl. ¶ 64;
Ex. 5, DE [1-5].)

A conference call between the Village and the DOS was held on September 3, 2015.  (Ex.
4, annexed to Compl., DE [1-4].)  By letter dated September 15, 2015, authored by Prokop, the
Village "renew[ed] its objection to the fact that this process was initiated by one property owner
for a threat and leverage in a private dispute."  (Id.)  According to the September 3, 2019 letter,
Vegliante, as "one of the longest serving mayors in New York State . . . attest[ed] that he [was]
not aware that the regulations which the [DOS] [was] seeking to enforce in the Village . . . ha[d]
been enforced in this manner in any other municipality in New York State."  (Id.)  The Village
advised the DOS that it was not aware of any structure within the Village, including Plaintiff's,
that could be considered a four-story structure subject to the BCNYS.  (Id.)  The Village also

advised the DOS that it would be sending a letter to all property owners in the Village regarding "the existence or location of underground liquid propane fuel tanks, and explaining what actions must be taken by owner of a property that has an underground liquid propane fuel tank." (Id.) With respect to Plaintiff's Property, the Village advised the DOS that it was aware that the Property contains an underground liquid propane fuel tank "that may be within ten feet of the residential structure on the property or the property line," and, as such, "the tank will have to be moved or removed or a formal or administrative variance obtained." (Id.)

The Village sent out the aforementioned letter with respect to underground fuel tanks to all property owners in the Village on September 23, 2015. (Compl. 67 and Ex. 3, annexed thereto, DE [1-3].) That letter advised property owners that the DOS notified the Village "that there is a concern that one or more homes in the Village may have installed buried propane tanks that are not in conformance with the Uniform Code." (Compl. ¶ 67; Ex. 3, DE [1-3].) The September 23, 2015 letter notified property owners that the DOS "informed the Village that the Code requires that underground LP tanks with a capacity of up to 2,000 gallons must be located at least ten (10) feet from any building, and also ten (10) feet from any property line, where the neighboring property has been or can be developed." (Compl. ¶ 68; Ex. 3, DE [1-3].) The September 23, 2015 letter then provided property owners with information regarding remediation of the underground propane tanks. (Ex. 3, DE [1-3].)

Thereafter, the Village met with the DOS and the Village agreed to hire an engineer to review all properties within the Village and to compile a list of homes with code compliance issues regarding underground propane tanks. (Compl. ¶ 69.) Approximately seventy-six properties within the Village were in question with respect to code compliance and would need to apply for a variance, remove or abandon the buried propane tanks. (Compl. ¶ 70.)

During this time, the Village issued Plaintiff two Appearance Tickets, sworn out by Kalfur, as the Complainant, officer, and Building Inspector, for violations of the Village Town Code and the New York State Property Maintenance Code.  (Compl. ¶¶ 16, 66; Anesh Decl., Ex. 2-3; Turkel Decl., Ex. A.)[2]  The Appearance Tickets advised Plaintiff that failure to appear as directed would result in a warrant for her arrest.  (Id. ¶¶ 17, 66.)  Plaintiff fought the prosecution of the Appearance Tickets and they were ultimately dismissed by Decision and Order of the Village Justice Court on January 6, 2017.  (Id. ¶¶ 17, 72; Anesh Decl., Ex. 5.)[3]  The Village appealed the dismissal and, on February 13, 2018, the Appellate Term dismissed the appeal.  (Id. ¶¶ 18, 72.)  Plaintiff eventually sold the Property unfinished and without permits.  (Id. ¶ 20.)

Plaintiff commenced the within action on June 29, 2018, pursuant to 42 U.S.C. § 1983, alleging the following causes of action: (1) violation of her equal protection rights based on selective enforcement; (2) First Amendment retaliation; (3) abuse of process; (4) malicious prosecution; and (5) municipal liability.  Defendants filed the within motions to dismiss in response to Plaintiff's Complaint, seeking to dismiss Plaintiff's Complaint in its entirety for failure to state a claim upon which relief may be granted.  As stated above, Judge Feuerstein referred Defendants' motions to this Court for report and recommendation.  The Court now turns to the merits of Defendants' motions.

---

[2] While the Appearance Tickets are not attached as exhibits to the Complaint herein, they may nonetheless be considered by this Court as a document "incorporated in [the Complaint] by reference."  Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002) (citation omitted).
[3] The Court may also take judicial notice of public records, including court filings, when considering a motion to dismiss.  See Kramer v. Time Warner, Inc., 937 F.2d 767, 774 (2d Cir. 1991).

DISCUSSION

I.    Legal Standard

"To survive a motion to dismiss [pursuant to Rule 12(b)(6)], a complaint must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550

U.S. 544, 570 (2007)).  "Facial plausibility" is achieved when "the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable of the

misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).  As a general

rule, the court is required to accept all of the factual allegations in the complaint as true and to

draw all reasonable inferences in the plaintiff's favor.  See Ashcroft v. Iqbal, 556 U.S. 662, 678

(2009); Town of Babylon v. Fed. Hous. Fin. Agency, 699 F.3d 221, 227 (2d Cir. 2012).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements . . . are not entitled to the assumption of truth." Iqbal, 556 U.S. at 678-79 (citation

omitted); see also Twombly, 555 U.S. at 555 (stating that a court is "not bound to accept as true a

legal conclusion couched as a factual allegation").  "While legal conclusions can provide the

framework of a complaint, they must be supported by factual allegations," which state a claim

for relief.  Iqbal, 556 U.S. at 679.  A complaint that "tenders 'naked assertion[s]' devoid of

'further factual enhancement'" will not suffice.  Iqbal, 556 U.S. at 678 (quoting Twombly, 555

U.S. at 557).

II.    Jurisdictional Issues and Defenses

    A.    Statute of Limitations

        Defendants' first argument in support of their motions to dismiss is that most, but

not all, of Plaintiff's claims are time-barred.  "The statute of limitations for civil rights actions

8

brought pursuant to 42 U.S.C. § 1983 in federal courts in New York State is three years."
Moskowicz v. Richter, No. 17-CV-3074, 2019 WL 1958287, at *3 (E.D.N.Y. May 2, 2019)
(citing Owens v. Okure, 488 U.S. 235, 249-51 (1989)).  This statute of limitations applies to
Plaintiff's equal protection, First Amendment retaliation, and abuse of process claims.  See, e.g.,
Fahs Constr. Group, Inc. v. Gray, 725 F.3d 289, 292 (2d Cir. 2013) (per curiam) ("The statute of
limitations on an Equal Protection claim brought in New York under 42 U.S.C. § 1983 is three
years."); Raymond v. City of New York, 317 F. Supp. 3d 746, 774 (S.D.N.Y. 2018) ("There is a
three-year statute of limitations for First Amendment claims under 42 U.S.C. § 1983."); 
Anderson v. County of Putnam, No. 14-CV-7162, 2016 WL 297737, at *2 (S.D.N.Y. Jan. 22,
2016) ("Under New York law, the statute of limitations for § 1983 claims, including . . .
malicious abuse of process, is three years.").

"While the applicable statute of limitations in a § 1983 case is determined by state law,
'the accrual date of a § 1983 cause of action is a question of federal law that is not resolved by
reference to state law.'' Smith v. Campbell, 782 F.3d 93, 100 (2d Cir. 2015) (quoting Wallace v.
Keto, 549 U.S. 384, 388 (2007)).  Accrual occurs when the plaintiff "knew or should have
known of the discriminatory action." Washington v. County of Rockland, 373 F.3d 310, 319 (2d
Cir. 2004); see also Wallace, 549 U.S. at 388 (stating that accrual occurs when the plaintiff has
"a complete and present cause of action, that is, when the plaintiff can file suit and obtain
relief").

Plaintiff alleges that, because of her complaints to the DOS regarding the Village's
failure to comply with the Uniform Code, Defendants unlawfully discriminated and retaliated
against her in violation of Section 1983 by issuing her Appearance Tickets for purported code
violations.  Absent from the Complaint are the dates on which the Appearance Tickets were

issued, as well as the dates on which Plaintiff first became aware of them.  Defendants, however, have offered the Appearance Tickets as exhibits in support of their motions.  While Plaintiff argues that consideration of extraneous documents is improper in the context of a motion to dismiss, as set forth above, the Court may consider any document incorporated into the Complaint by reference, which the Appearance Tickets most certainly are.  See Chambers, 282 F.3d at 152.

The date of the first Appearance Ticket is June 1, 2015.  (Anesh Decl., Ex. 2; Turkel Decl., Ex. A.)  The second Appearance Ticket is dated June 29, 2015.  (Anesh Decl., Ex. 3; Turkel Decl., Ex. A.)  Since Plaintiff commenced this action on June 29, 2018, there is no question that any claims stemming from the issuance of the second Appearance Ticket are timely.  The issue of timeliness, therefore, stems only from the issuance of the first Appearance Ticket on June 1, 2015.

Defendants argue that Plaintiff's claims are untimely because the first Appearance Ticket was issued and mailed to Plaintiff on June 1, 2015.  The Village Defendants submit the certified mail receipt, dated June 1, 2015, to support their argument.  (Turkel Decl., Ex. A.)  Although this supports when the first Appearance Ticket was mailed to Plaintiff, there is nothing before the Court to indicate when Plaintiff actually received the first Appearance Ticket.  Neither the Complaint, nor any documents submitted by Defendants that may be properly considered by the Court on a motion to dismiss, state when Plaintiff received or became aware of the first Appearance Ticket.  Moreover, the date of appearance on the June 1, 2015 Appearance Ticket was July 6, 2015.  (Anesh Decl., Ex. 2; Turkel Decl., Ex. A.)  Plaintiff may have only become aware of the June 1, 2015 Appearance Ticket days before her mandated appearance.

Accordingly, drawing all reasonable inferences in favor of Plaintiff, as the Court must at

this juncture, this Court finds that Plaintiff's claims stemming from both Appearance Tickets are timely and respectfully recommends that Defendants' motions to dismiss on this ground be denied.

B.     Personal Involvement of Defendant Prokop

Defendant Prokop seeks to be dismissed from this action for lack of personal involvement, which is a prerequisite to a finding of liability under Section 1983.  See Grullon v. City of New Haven, 720 F.3d 133, 138 (2d Cir. 2013) ("[T]o establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation.").  This Court finds that the Complaint and the exhibits annexed thereto sufficiently establish personal involvement on Prokop's part. Prokop was the representative of the Village who communicated directly with the DOS with respect to its investigation of the Village for noncompliance with the Uniform Code, which investigation Plaintiff alleges was the basis for Defendants' discrimination and retaliation against her.  Moreover, in the letters and emails exchanged between Prokop and the DOS, Prokop made repeated references to the DOS allowing itself to be used by Plaintiff as "a threat and leverage in a private dispute," demonstrating what could be construed as animus towards Plaintiff on Prokop's part.  (Compl. ¶¶ 60, 63 and Ex. 4-5.)

Based on the foregoing, this Court finds sufficient personal involvement by Prokop to allow Plaintiff's Section 1983 claims against Prokop to proceed.  Accordingly, it is respectfully recommended that Prokop's motion to dismiss for lack of personal involvement be denied.

C.     Absolute and Qualified Immunity

Defendants Vegliante, Kalfur, and Prokop (the "Individual Defendants") all move to dismiss Plaintiff's Complaint on the ground that they are entitled to qualified immunity.

Defendant Prokop also moves to dismiss on the grounds of absolute immunity.

      1.    <u>Absolute Immunity</u>

      It is well established that a "prosecuting attorney who acted within the scope of his duties in initiating and pursuing a criminal prosecution . . . is immune from a civil suit for damages under § 1983." <u>Shmueli v. City of New York</u>, 424 F.3d 231, 236 (2d Cir. 2005) (quoting <u>Imbler v. Pachtman</u>, 424 U.S. 409, 410 (1976)). To establish absolute prosecutorial immunity, the prosecutor has the burden of proving that "they were functioning as 'advocates' when they engaged in the challenged conduct." <u>Warney v. Monroe County</u>, 587 F.3d 113, 121 (2d Cir. 2009) (quoting <u>Doe v. Phillips</u>, 81 F.3d 1204, 1209 (2d Cir. 1996)). "[P]rosecutors are absolutely immune . . . for conduct in 'initiating a prosecution and in presenting the [municipality's] case,' . . . insofar as that conduct is 'intimately associated with the judicial phase of the criminal process.'" <u>Burns v. Reed</u>, 500 U.S. 478, 486 (1991) (quoting <u>Imbler</u>, 424 U.S. at 430-31). Such immunity extends to individuals serving as "Village Attorney," as Prokop is here. <u>See</u> <u>Verbeek v. Teller</u>, 158 F. Supp. 2d 267, 281 (E.D.N.Y. 2001).

      However, "[a] prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity." <u>Warney</u>, 587 F.3d at 121 (quoting <u>Buckley v. Fitzsimmons</u>, 509 U.S. 259, 273 (1993)). "When a prosecutor is engaged in administrative or investigative activities, he is entitled only to qualified immunity . . . ." <u>Pinaud v. County of Suffolk</u>, 52 F.3d 1139, 1147 (2d Cir. 2015) (quoting <u>Day v. Morgenthau</u>, 909 F.2d 75, 77 (2d Cir. 1990)) (additional citations omitted).

      Here, Prokop argues that he is entitled to absolute immunity for "his conduct as Village Attorney in prosecuting the Appearance Tickets" issued to Plaintiff. (Prokop's Mem. of Law in

Supp. of Mot. to Dismiss 7.)  Plaintiff argues, however, that her claims against Prokop are based on his representation of the Village in connection with the DOS investigation.  (Pl. Mem. of Law in Opp'n to Prokop's Mot. to Dismiss 7.)  A review of the Complaint supports Plaintiff's argument.  The allegations against Prokop pertain to his communications with the DOS on behalf of the Village, not with respect to his prosecutorial conduct.  Accordingly, this Court finds that Prokop is not entitled to absolute immunity from suit and recommends that Prokop's motion to dismiss on the grounds of absolute immunity be denied.

2.    Qualified Immunity

"Qualified immunity is an affirmative defense that shields government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Bartels v. Guariglia, No. 16-CV-1848, 2019 WL 2076809, at *8 (E.D.N.Y. May 10, 2019) (quoting Stephenson v. Doe, 332 F.3d 68, 76 (2d Cir. 2003)) (internal quotation marks and citation omitted).  A constitutional right is "clearly established" where "existing law . . . place[s] the constitutionality of the [official's] conduct 'beyond debate.'" District of Columbia v. Wesby, __ U.S. __, 138 S. Ct. 577, 589 (2018) (quoting Ashcroft v. al-Kidd, 536 U.S. 731, 741 (2011)). "To that end, the Supreme Court has described qualified immunity as a 'demanding' doctrine protecting 'all but the plainly incompetent or those who knowingly violate the law.'" Bartels, 2019 WL 2076809, at *8 (quoting Wesby, 138 S. Ct. at 589) (additional citation omitted).

In determining whether a defendant is entitled to qualified immunity, courts conduct a two-step analysis: (1) do the facts demonstrate that the defendant's conduct violated plaintiff's constitutional rights; and, (2) if there was a constitutional violation, was the right clearly established at the time of the defendant's actions.  See Bartels, 2019 WL 2076809, at *9 (citing

13

Barboza v. D'Agata, 676 F. App'x 9, 12 (2d Cir. 2017)).  A court may, however, "in its own

discretion, refrain from determining whether a constitutional right has been violated and move

directly to the question of qualified immunity (i.e., whether a constitutional right was clearly

established at the time the defendant acted)."  Costello v. City of Burlington, 632 F.3d 41, 51-52

(2d Cir. 2011) (Pooler, J., concurring) (citing Pearson v. Callahan, 555 U.S. 223 (2009)).

        The Individual Defendants assert that they are entitled to qualified immunity because the

law is "somewhat unsettled as to whether the issuance of multiple desk appearance tickets can

support a constitutional claim," (Village Def. Mem. of Law in Supp. of Mot. to Dismiss 7;

Prokop Mem. of Law in Supp. of Mot. to Dismiss 9), and because it was objectively reasonable

for them to believe their actions were lawful.  (Village Def. Mem. of Law in Supp. of Mot. to

Dismiss 6.)  In response, Plaintiff argues that a qualified immunity defense is premature at this

juncture because there are factual issues requiring resolution by the factfinder before any

determination of qualified immunity can be made, (Pl. Mem. of Law in Opp'n to Village Def.

Mot. to Dismiss 10), and that the allegations contained in the Complaint sufficiently demonstrate

that the Individual Defendants acted outside the scope of their official duties with respect to their

conduct towards Plaintiff, rendering their actions unreasonable.  (Id. at 11.)

        "Qualified immunity is an affirmative defense that must be pled and proved by the

defendant."  Shechter v. Comptroller of the City of N.Y., 79 F.3d 265, 270 (2d Cir. 1996) (citing

Blissett v. Coughlin, 66 F.3d 531, 538 (2d Cir. 1995)).  The mere fact that the Individual

Defendants are "government officials" is not enough to establish qualified immunity.  Shechter,

79 F.3d at 270.  The Individual Defendants "must further demonstrate the specific acts at issue

were performed within the scope of their official duties."  Id. (emphasis omitted).

        Moreover, while "[t]he matter of whether a right was clearly established at the pertinent

time is a question of law[,] . . . the matter of whether a defendant official's conduct was objectively reasonable, i.e., whether a reasonable official would reasonably believe his conduct did not violate a clearly established right, is a mixed question of law and fact." Higazy v. Templeton, 505 F.3d 161, 170 (2d Cir. 2007) (quoting Kerman v. City of New York, 374 F.3d 93, 108-09 (2d Cir. 2004)).  Accordingly, although "'[i]mmunity ordinarily should be decided by the court," that is true only in those cases where the facts concerning the availability of the defense are undisputed; otherwise, jury consideration is normally required." Higazy, 505 F.3d at 170 (quoting Oliveira v. Mayer, 23 F.3d 642, 649 (2d Cir. 1994)) (additional citation omitted).

In the within action, the Complaint plausibly alleges that in response to the DOS's investigation into the Village's noncompliance with the Uniform Code, Defendants commenced a course of conduct to retaliate against Plaintiff for her role as a whistleblower, which prompted the DOS's investigation of the Village in the first place.  Such allegations are further supported by the documents annexed to the Complaint, which reflect animus towards Plaintiff by the Village and the Individual Defendants.  Accordingly, at this stage of the action, "the facts do not support a finding, as a matter of law, that [the Individual] Defendants' actions were 'objectively reasonable' with respect to Plaintiff's . . . claims." Szabo v. Parascandolo, No. 16-CV-3683, 2019 WL 481925, at *7 (E.D.N.Y. Feb. 6, 2019).  Rather, several factual issues must be resolved prior to a determination with respect to qualified immunity.  As such, this Court finds that the Individual Defendants are not entitled to qualified immunity at this stage of the litigation.  The Court respectfully recommends that Defendants' motions to dismiss on the grounds of qualified immunity be denied, with leave to renew at a later stage of the action.

III.    Plaintiff's Causes of Action

A.    Equal Protection

In her Complaint, Plaintiff alleges that Defendants discriminated against her based upon her sexual orientation in issuing the Appearance Tickets.  (Compl. ¶¶ 78-83.) Defendants argue that Plaintiff's equal protection claim must be dismissed because the Complaint fails to allege any similarly situated comparators and lacks any factual support for Plaintiff's claim that she was treated differently because of her sexual orientation.  As set forth below, this Court agrees with Defendants.

The Equal Protection Clause of the Fourteenth Amendment requires municipal entities to treat all similarly situated individuals alike.  See City of Cleburne v. Cleburne Living Cent., Inc., 473 U.S. 432, 439 (1985).  A plaintiff making such a claim may proceed under one of two theories: (1) that she was subjected to "selective enforcement;" or (2) that she was treated as a "class of one."  Raus v. Town of Southampton, No. CV 13-7056, 2015 WL 2378974, at *7 (E.D.N.Y. May 18, 2015), aff'd, 661 F. App'x 81 (2d Cir. 2016).

"In order to state a claim under the Equal Protection Clause for selective enforcement of the law, [P]laintiff[] must plead that (1) [she] was 'treated differently from other similarly situated' individuals and (2) this 'differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'"  Butler v. City of Batavia, 323 F. App'x 21, 22 (2d Cir. 2009) (quoting Cine Sk8, Inc. v. Town of Henrietta, 507 F.3d 778, 790 (2d Cir. 2007)).  "A 'class of one' claim succeeds where the plaintiff can show intentional treatment different than those similarly situated, and a lack of rational basis for that treatment."  Raus, 2015 WL 2378974, at *7 (citing Sacher v. Village of Old Brookville, 967 F. Supp. 2d 663, 670

(E.D.N.Y. 2013)) (additional citation omitted).  Under either application, a plaintiff is required to "sufficiently plead the existence of 'similarly situated' others."  <u>Segreto v. Town of Islip</u>, No. 12-CV-1961, 2014 WL 737531, at *6 (E.D.N.Y. Feb. 24, 2014).

Here, Plaintiff alleges that Defendants "selectively enforced New York State Property Maintenance Code, Section 303.1 against Plaintiff . . . based upon her sexual orientation." (Compl. ¶¶ 78-79.)  In support of this claim, Plaintiff alleges that "[b]ased upon the Village's response to Plaintiff's FOIL request, no one other than Plaintiff has ever received an Appearance Ticket for failure to comply with New York State Property Maintenance Code, Section 303.1." (<u>Id.</u> ¶ 81.)  No other facts in support of this claim are pleaded anywhere in the Complaint.

As Defendants correctly argue, Plaintiff has failed to adequately plead the existence of similarly situated comparators.  Plaintiff argues in her memorandum in opposition to Defendants' motions that the other homeowners in the Village are the similarly situated comparators; however, Plaintiff is required to "allege facts showing that [she is] similarly situated to other persons with respect to the specific incident or incidents that are alleged to be examples of differential treatment."  <u>Segreto</u>, 2014 WL 737531, at *7 (quoting <u>Missere v. Gross</u>, 826 F. Supp. 2d 542, 561 (S.D.N.Y. 2011)).  Plaintiff has failed to make such a showing.

Moreover, with respect to the second part of the test, which requires Plaintiff to demonstrate that the differential treatment was based on impermissible considerations, "[w]hile Plaintiff[] allege[s] that sexual orientation motivated the conduct of the municipal defendants, [she has] not pleaded facts sufficient to make this allegation plausible."  <u>Butler</u>, 323 F. App'x at 22.  Other than pleading that she bought the Property with her wife, (Compl. ¶ 1), the Complaint does not mention Plaintiff's sexual orientation in any other way.  Nor does it plead that Defendants were even aware of Plaintiff's sexual orientation, let alone discriminated against her

upon that basis.  See Butler, 323 F. App'x at 22-23 (affirming dismissal of equal protection claim

where plaintiffs' allegations demonstrated that the municipal defendants "were aware of"

plaintiffs' sexual orientation but did not demonstrate a discriminatory intent on that basis").

Based on the foregoing, this Court respectfully recommends that Plaintiff's equal

protection claim be dismissed.

B.    First Amendment Retaliation

Plaintiff's second cause of action alleges that in response to her complaints to the

DOS regarding the Village's failure to comply with the Uniform Code, Defendants issued and

prosecuted the two Appearance Tickets against Plaintiff.  (Compl. ¶¶ 86-89.)  In seeking to

dismiss this claim, Defendants argue that Plaintiff fails to allege a chilling of her speech, she fails

to allege any concrete harm or loss, and that that there was probable cause to issue the

Appearance Tickets, therefore rendering her claim unsuccessful.  This Court disagrees with

Defendants for the reasons set forth below.

In the Second Circuit, the harm or injury required to allege a First Amendment retaliation

claim varies depending on the factual context.  See Zherka v. Amicone, 634 F.3d 642, 643 (2d

Cir. 2011).  "'Private citizens alleging retaliation for their criticism of public officials'" are

generally required to show that 'they engaged in protected speech, persons acting under color of

state law took adverse action against them in retaliation for that speech, and the retaliation

resulted in actual chilling of their exercise of their constitutional right to free speech.'"  Vaher v.

Town of Orangetown, 916 F. Supp. 2d 404. 430 (S.D.N.Y. 2013) (quoting Zherka, 634 F.3d at

643).  In other private citizen cases, however, the Second Circuit has dispensed with the

"chilling" requirement where the retaliation is alleged to have caused an injury separate from any

chilling effect.  See Gill v. Pidlypchak, 389 F.3d 389, 383 (2d Cir. 2004) (holding that "chilling"

is only required in cases where a plaintiff states no harm independent of the chilling of speech); see also Dorsett v. County of Nassau, 732 F.3d 157, 160 (2d Cir. 2013) ("Chilled speech is not the sine qua non of a First Amendment claim.  A plaintiff has standing if he can show either that his speech has been adversely affected by the . . . retaliation . . . or that he has suffered some other concrete harm.").  Defendants argue that Plaintiff has failed to demonstrate the second and third prongs of a First Amendment retaliation claim – that Defendants took adverse action against her in retaliation for her speech and that Defendants' actions chilled the exercise of Plaintiff's First Amendment right or cause her some other concrete harm.  There is no dispute that Plaintiff engaged in protected speech when voicing complaints to the DOS.

With respect to the second element of a First Amendment retaliation claim, "[e]vidence of improper motive 'may include expressions by the officials regarding their state of mind, circumstances suggesting in a substantial fashion that the plaintiff has been singled out, or the highly unusual nature of the actions taken.'"  Anderson v. City of N.Y., 817 F. Supp. 2d 77, 96 (E.D.N.Y. 2011) (quoting Blue v. Koren, 72 F.3d 1075, 1084 (2d Cir. 1995)).  Plaintiff's Complaint adequately pleads this element.  First, the Complaint states that there was no probable cause for the Plaintiff's prosecution.  (Compl. ¶ 88.)  Second, the exhibits attached to the Complaint – and, more specifically, the statements contained within them – demonstrate a substantial animus toward Plaintiff on the part of Defendants.  Finally, Plaintiff alleges that no one else in the Village has ever been prosecuted – or even received an Appearance Ticket – for violation of New York Property Maintenance Code, Section 303.1.  (Compl. ¶ 81.)  As such, this Court finds that Plaintiff has sufficiently pleaded that Defendants took adverse action against her in retaliation for her protected speech.

With respect to the third element – concrete harm as a result of Defendants' actions – the

Complaint alleges that Plaintiff incurred attorney's fees in defending against the prosecution of the Appearance Tickets, including with respect to an appeal filed by the Village when the Appearance Tickets were dismissed. (Compl. ¶ 18, 20.) Moreover, Plaintiff alleges that, as a result of Defendants' actions, she was forced to sell the Property unfinished and without permits and leave the Village altogether. (Id. ¶¶ 19-20.) This Court finds that the foregoing sufficiently pleads concrete harm separate and apart from a chilling of speech.

Accordingly, construing the allegations in the Complaint in the light most favorable to Plaintiff, this Court finds that Plaintiff has adequately pleaded a plausible claim for First Amendment retaliation and respectfully recommends that Defendants' motions to dismiss this cause of action be denied.

C.    Abuse of Process

Plaintiff's next cause of action asserts a claim for federal malicious abuse of process under Section 1983. (Compl. ¶¶ 92-96.) Defendants argue for dismissal of this claim on the grounds that there was probable cause to issue the Appearance Tickets and Plaintiff has failed to plausibly allege that Defendants had a collateral objective in issuing the Appearance Tickets. This Court disagrees with Defendants.

To state a claim for malicious abuse of process under both Section 1983 and New York law, Plaintiff must establish the following: (1) that Defendants "employ[ed] regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." Savino v. City of New York, 331 F.3d 63, 76 (2d Cir. 2003) (quoting Cook v. Sheldon, 41 F.3d 73, 80 (2d Cir. 1994)). With respect to the third element, "[t]he pursuit of a collateral objective must occur after the process is issued; the mere act of

issuing process does not give rise to a claim." Mazzone v. Town of Southampton, 283 F. Supp.

3d 38, 58 (E.D.N.Y. 2017), adopted as modified by, 2017 WL 6017357, at *1 (E.D.N.Y. Dec. 1,

2017) (quoting Fiedler v. Incandela, 222 F. Supp. 3d 141, 164 (E.D.N.Y. 2016)) (alteration in

original).  Accordingly, "[t]o state a claim for abuse of criminal process, it is not sufficient for a

plaintiff to allege that the defendants were seeking to retaliate against [her] by pursuing [her]

arrest and prosecution."  Slater v. Mackey, No. 12-CV-4325, 2015 WL 6971793, at *10

(E.D.N.Y. Nov. 10, 2015) (quoting Savino, 331 F.3d at 77).  Rather, Plaintiff "must claim

[Defendants] aimed to achieve a collateral purpose beyond or in addition to [her] criminal

prosecution."  Slater, 2015 WL 6971793, at *10 (quoting Savino, 331 F.3d at 77); see also Pinter

v. City of New York, 976 F. Supp. 2d 539, 568 (S.D.N.Y. 2013) ("In other words, the proper use

of legal process based on an improper or malicious motive such as a desire for retaliation is

insufficient to satisfy the 'collateral objective' requirement.").  "A malicious abuse of process

claim thus requires an ulterior purpose such as the infliction of economic harm, extortion,

blackmail, or retribution."  Mazzone, 283 F. Supp. 3d at 58 (citations omitted).

 In her opposition to the within motions, Plaintiff argues that she has met the collateral

objective requirement by alleging that Defendants issued process against her in the form of the

Appearance Tickets as "retribution for Plaintiff's reporting the Village's noncompliance with

Code and/or to silence Plaintiff from continuing to report the Village's non-compliance with

Code."  (Pl. Mem. of Law in Opp'n to Village Def. Mot. to Dismiss 20; Compl. ¶ 94.)  This

Court finds such an allegation to state a claim for abuse of process.  "[A]buse of process

resembles a form of extortion by which the defendant invokes legal process to coerce the

plaintiff into doing something other than what the process necessitates."  Sherman v. City of

New York, No. 18-cv-5359, 2019 WL 2164081, at *11 (E.D.N.Y. May 16, 2019) (quoting Folk

v. City of New York, 243 F. Supp. 3d 363, 375 (E.D.N.Y. 2017)) (alteration in original) (additional citations omitted). Here, Plaintiff alleges that Defendants employed process against her in an attempt to prevent her from voicing further complaints to the DOS regarding the Village's non-compliance with the Uniform Code. This Court finds that this satisfies the collateral objective element of an abuse of process claim. Accordingly, this Court recommends that Defendants' motions to dismiss Plaintiff's abuse of process claim be denied.[4]

 D.  Malicious Prosecution

"To establish a malicious prosecution claim under New York law, a plaintiff must prove (1) the initiation or continuation of a criminal proceeding against plaintiff, (2) termination of the proceeding in plaintiff's favor, (3) lack of probable cause for commencing the proceeding, and (4) actual malice as a motivation for defendant's actions." Sherman, 2019 WL 2164081, at *9 (quoting Manganiello v. City of New York, 612 F.3d 149, 161 (2d Cir. 2010)) (additional citation and internal quotation marks omitted). "To prevail on a § 1983 claim for malicious prosecution, the plaintiff must also establish 'a post-arraignment seizure.'" Sherman, 2019 WL 2164081, at *9 (quoting Swartz v. Insogna, 704 F.3d 105, 112 (2d Cir. 2013)).

Here, Plaintiff alleges a malicious prosecution claim based on the issuance and prosecution of the Appearance Tickets against her by Defendants. (Compl. ¶¶ 98-104.) Defendants argue that the claim should be dismissed because there was probable cause to issue the Appearance Tickets and because Plaintiff fails to allege a Fourth Amendment seizure, as required under Section 1983. For the following reasons, this Court agrees with Defendants.

---

[4] This Court declines to address Defendants' probable cause argument since, despite Defendants' assertions to the contrary, the Complaint explicitly alleges that there was no probable cause for Plaintiff's prosecution. (Compl. ¶ 88.) This Court finds that the issue of probable cause is better resolved on a motion for summary judgment or at the time of trial.

"When raising a malicious prosecution claim under Section 1983, a plaintiff must also show a seizure or other perversion of proper legal procedures implicating the claimant's personal liberty and privacy interests under the Fourth Amendment." Mazzone, 283 F. Supp 3d at 52 (quoting Mitchell v. City of New York, 841 F.3d 72, 79 (2d Cir. 2016)) (additional citation and internal quotation marks omitted); see also Graham v. City of New York, 869 F. Supp. 2d 337, 356 (E.D.N.Y. 2012) ("The federal cause of action for malicious prosecution is more limited in scope than the equivalent claim under New York law. While New York recognizes the tort of civil malicious prosecution, a claim for malicious prosecution under § 1983 may only arise where there has been a violation of the plaintiff's Fourth Amendment rights."). "[S]ince the gist of a claim for malicious prosecution is abuse of the judicial process, a plaintiff pursuing such a claim under § 1983 must show that the seizure resulted from the initiation or pendency of judicial proceedings." Murphy v. Lynn, 118 F.3d 938, 944 (2d Cir. 1997).

Here, Plaintiff alleges that she was issued two Appearance Tickets directing her attendance in court in order to avoid arrest by the issuance of a formal arrest warrant. (Compl. ¶ 17.) While the Complaint does not specify how many court appearances Plaintiff was required to make, the prosecution against her was eventually dismissed, as was the Village's appeal of that dismissal. (Id. ¶ 18.) Defendants argue that the issuance of the Appearance Tickets requiring court appearances does not rise to the level of a Fourth Amendment seizure. Defendants are correct.

While the law in this circuit seems to be unsettled with respect to Fourth Amendment seizures, compare Burg v. Gossselin, 591 F.3d 95 (2d Cir. 2010) (finding no Fourth Amendment seizure where plaintiff was issued a pre-arraignment summons requiring a later court appearance) with Swartz v. Insogna, 704 F.3d 105 (2d Cir. 2013) (finding a Fourth Amendment

seizure where plaintiff was required to appear in court several times post-arraignment), the Second Circuit has explicitly held that "the issuance of a pre-arraignment non-felony summons requiring a later court appearance, without further restrictions, does not constitute a Fourth Amendment seizure." Burg, 591 F.3d at 98.  This is exactly the type of summons issued to Plaintiff herein.

The Complaint alleges that Plaintiff was issued pre-arraignment, non-felony appearance tickets directing Plaintiff to appear in court to avoid being arrested and that Plaintiff made an unspecified number of court appearances with regard to the charges.  (Compl. ¶¶ 17-18.) However, no detail is provided with respect to these appearances.  Moreover, the Complaint is "bereft of allegations that Plaintiff was arraigned, physically detained, required to post bail, or placed by court order under any travel restrictions." Mazzone, 283 F. Supp. 3d at 54.  Tellingly, Plaintiff does not even address this issue at all in her opposition papers to the within motions. Accordingly, this Court finds that Plaintiff has failed to allege sufficient facts to establish that she was seized under the Fourth Amendment for malicious prosecution purposes.  As such, her malicious prosecution claim fails as a matter of law and should be dismissed.

     E.    <u>Municipal Liability</u>

Plaintiff's final cause of action alleges municipal liability on the part of the Village.  The Village Defendants move to dismiss the claim on the ground that Plaintiff has failed to adequately allege a municipal custom or policy that led to a violation of her constitutional rights.  The Court agrees with Defendants.

Pursuant to the Supreme Court's decision in <u>Monell v. New York City Department of Social Services</u>, 436 U.S. 658 (1978), "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." <u>Id.</u> at 694.  Rather, a municipal entity may

24

only be held liable where injury results from the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." Id. A municipality may not be held liable under Section 1983 under a respondeat superior theory. See Pembaur v. City of Cincinnati, 475 U.S. 469, 478 (1986). Therefore, "to prevail on a claim against a municipality under Section 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008) (citing Monell, 436 U.S. at 690-91). "The plaintiff must show a 'direct causal link between a municipal policy or custom, and the alleged constitutional deprivation.'" Mazzone, 283 F. Supp. 3d at 61 (quoting City of Canton v. Harris, 489 U.S. 378, 385 (1989)).

    "In determining municipal liability, it is necessary to conduct a separate inquiry into whether there exists a 'policy' or 'custom.'" Davis v. City of New York, 228 F. Supp. 2d 327, 336 (S.D.N.Y. 2002). "Although there is no heightened pleading requirement for complaints alleging municipal liability under § 1983, a complaint does not suffice if it tenders naked assertion[s] devoid of further factual enhancement." McLennon v. City of New York, 171 F. Supp. 3d 69, 94 (E.D.N.Y. 2016) (quoting Green v. City of Mount Vernon, 96 F. Supp. 3d 263, 301-02 (S.D.N.Y. 2015)) (additional citation and internal quotation marks omitted) (alteration in original). At the pleading stage, "the mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995) (internal citation and quotation marks omitted).

To demonstrate a policy, custom, or practice for purposes of municipal liability, "a plaintiff need not identify an expressly adopted rule." Mazzone, 283 F. Supp. 3d at 61. Rather, a plaintiff may plead the existence of a municipal policy or custom by alleging any one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by governmental officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

Jones v. Bay Shore Union Free Sch. Dist., 170 F. Supp. 3d 420, 438 (E.D.N.Y. 2016), aff'd, 666 F. App'x 92 (2d Cir. 2016) (quoting Brandon v. City of New York, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010)).

Here, the allegations of the Complaint fail to substantiate any of the four Monell categories. Rather, the Complaint conclusorily states that (1) "[t]he practices described in this Complaint comprise formal policies of the Village," (compl. ¶ 106), (2) "[m]any of the Defendants are themselves policy-makers and thus their conduct and unconstitutional acts and omissions constituted the policy and practice of the Village," (id. ¶ 107), (3) "[t]he deliberate indifference on the part of the Village caused Plaintiff's injuries," (id. ¶ 108), and (4) "[t]he Village failed to train its agents and employees in legal justifications for citizens' prosecutions." (Id. ¶ 109.) These allegations are nothing more than a formulaic recitation of the elements of a Monell claim, without any factual support to substantiate them. See Vail v. City of New York, 68 F. Supp. 3d 412, 431 (S.D.N.Y. 2014) ("A municipal policy may be pronounced or tacit and reflected in either action or inaction, but either way Plaintiff must allege it with factual specificity, rather than by

bare and conclusory statements."

Moreover, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."  Jones, 170 F. Supp. 3d at 438 (quoting City of Oklahoma v. Tuttle, 471 U.S. 808, 823-24 (1985)).  Plaintiff's Complaint contains no factual allegations demonstrating that anyone other than she has been subjected to the alleged unconstitutional policy or custom she claims to exist.  Accordingly, this Court finds that Plaintiff fails to state a claim for municipal liability and, as such, the claim should be dismissed.

IV.   Leave to Amend

In her opposition to the within motions, Plaintiff requests leave to replead should the Court find any of her claims lacking.  As leave to amend should be freely given, see Fed. R. Civ. P. 15(a), "it is the usual practice upon granting a motion to dismiss to allow leave to replead."  Cruz v. TD Bank, N.A., 742 F.3d 520, 523 (2d Cir. 2013). Accordingly, this Court recommends that Plaintiff be granted leave to replead those claims for which dismissal is recommended.  Plaintiff is cautioned, however, that in the event this Report and Recommendation is adopted and Plaintiff is granted leave to replead, amendment should only be attempted if she has additional factual matters to allege that would cure the deficits identified by this Court.

## RECOMMENDATION

For the foregoing reasons, this Court respectfully recommends that Defendants' motions to dismiss, appearing at Docket Entries [20] and [21], be granted in part and

denied in part.  Specifically, this Court recommends that the motions be granted with

respect to Plaintiff's claims for violation of her equal protection rights, malicious

prosecution and municipal liability and denied with respect to Plaintiff's First

Amendment retaliation and abuse of process claims.  This Court also respectfully

recommends that Plaintiff be granted leave to amend her Complaint to replead the claims

for which dismissal is recommended.

OBJECTIONS

A copy of this Report and Recommendation is being provided to all counsel via ECF.  Any

written objections to this Report and Recommendation must be filed with the Clerk of the Court

within fourteen (14) days of filing of this report.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a),

72(b).  Any requests for an extension of time for filing objections must be directed to the District

Judge assigned to this action prior to the expiration of the fourteen (14) day period for filing

objections.  Failure to file objections within fourteen (14) days will preclude further review of

this report and recommendation either by the District Court or Court of Appeals. Thomas v. Arn,

474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive

right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to

object timely to a magistrate's report operates as a waiver of any further judicial review of the

magistrate's decision").


**SO ORDERED:**

Dated: Central Islip, New York
      June 10, 2019                           /s/      Anne. Y. Shields
                                           ANNE Y. SHIELDS
                                           United States Magistrate Judge