UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------- X
:
**MARIA SAUSA**, :
:
              Plaintiff, :  **MEMORANDUM DECISION AND ORDER**
:
      – against – :  18-CV-3802 (AMD) (AYS)
:
**VILLAGE OF WEST HAMPTON DUNES;** :
**GARY VEGLIANTE, MAYOR OF THE** :
**VILLAGE OF WEST HAMPTON DUNES;** :
**ROBERT KALFUR, BUILDING INSPECTOR** :
**FOR THE VILLAGE OF WEST HAMPTON** :
**DUNES; JOSEPH PROKOP, VILLAGE** :
**ATTORNEY FOR THE VILLAGE OF WEST** :
**HAMPTON DUNES; JOHN AND JANE DOE #1-** :
**10 EMPLOYEES/AGENTS OF THE VILLAGE** :
**OF WEST HAMPTON DUNES,** :
:
              Defendants. :
--------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

      The plaintiff sued the Village of West Hampton Dunes (the "Village") and its officials. She claimed that the defendants ticketed her for alleged violations of Village building codes in an effort to retaliate against her for reporting to state authorities the Village's misapplication of building codes. On September 30, 2019, the Honorable Sandra Feuerstein dismissed all but two defendants—Mayor Gary Vegliante and building inspector Robert Kalfur. Judge Feuerstein also dismissed all but two of the plaintiff's claims—First Amendment retaliation and abuse of process. On November 30, 2020, the remaining defendants moved for summary judgment.

      This case was reassigned to me on June 11, 2021. On September 8, 2021, I held a hearing on the motion. I denied the motion in most respects, concluding that issues of material fact precluded summary judgment on most issues, but directed the parties to submit additional

briefing on whether Vegliante should be dismissed from the case.  For the reasons explained below, the motion to dismiss Vegliante is denied.

## BACKGROUND

The plaintiff purchased property at 895 Dune Road in the Village, intending to demolish the existing structure and build a three-story home with a pool.  (ECF No. 65, Pl.'s Counter 56.1 Statement & Rule 56.1(b) Additional Material Facts ("56.1 Statement") at 1, 10, 12.)  The plaintiff hired a developer and an architect.  (*Id.* at 13.)  Construction began, but stopped in 2015 when the plaintiff became concerned that the house was unsafe.  (*Id.* at 13, 15.)  In March of 2015, the plaintiff fired the developer (*id.* at 21), and at the suggestion of one of her engineers, erected a six-foot fence around the property.  (*Id.* at 21-22, 28-29.)

Around the same time, the plaintiff complained to state authorities that the Village was violating building codes by miscounting building stories.  (ECF No. 65, Ex. A at 35; Ex. P at 35, 37, 169; Ex. 1 at 28.)  On March 31, 2015, Department of State official Richard Smith met with Kalfur and Vegliante to discuss the enforcement of building codes at the plaintiff's property.[1]  (Ex. A at 22; Ex. 1 at 29.)  Smith explained that the plaintiff's house was a four-story building, but that it had been constructed in accordance with the building code for a three-story building; because her house was a four-story building, it was covered by the Building Code of New York State, not the Residential Code of New York State.  (Ex. A at 22; Ex. 1 at 31, 37, 45, 48.)  Kalfur responded that other four-story buildings in the Village had been constructed under the Residential Code.  (Ex. A at 22; Ex. 1 at 54.)  Subsequently, Smith told Kalfur that residential propane tanks in the Village may have been installed too close to property lines in violation of the Fire Code of New York State.  (Ex. A at 23; Ex. 1 at 58-59, 61.)  On April 14, 2015, Smith

---

[1] Smith's supervisor, Brian Tollisen, joined the meeting by conference call.  (Ex. A at 22; Ex. 1 at 29.)

wrote to Kalfur, reminding him that the Village was required to "exercise its powers in due and proper manner." (*Id.*)  The Department of State's investigation into the Village's application of building codes continued through at least September of 2015, during which the Village disputed the Department of State's conclusions (Ex. A at 35-37, 41-43; Ex. 1 at 71-72, 74, 88), complaining that "this process was initiated by one property owner for a threat and leverage in a private dispute." (Ex. A at 35.)

On May 22, 2015, Kalfur called the plaintiff, and told her that he was receiving complaints about her fence, which "looked like shit." (56.1 Statement at 21.)  Shortly thereafter, the plaintiff received two tickets—one for violating Village Code 560-35(A)(1), which states, "No fence or wall in a required front yard shall have a height greater than four feet," and another for violating Property Maintenance Code of New York State § 303, which provides, "Swimming pools shall be maintained in a clean and sanitary condition, and in good repair."[2]  (*Id.* at 23.)  After she received the tickets, the plaintiff cut her fence down to four feet, (*id.* at 28), pumped out water from the pool, and hired a company to cover it. (*Id.* at 28-29.)  She hired counsel to fight the tickets in court. (*Id.* at 30.)  Although she never had to appear personally, she had to pay her lawyers. (*Id.*)  The tickets were eventually dismissed. (*Id.*)

The plaintiff argues that the defendants issued the tickets to retaliate against her for complaining to state authorities about the Village's misapplication of building codes. (ECF No. 1 ¶¶ 5-15.)  On November 5, 2018, the defendants filed two motions to dismiss the complaint for failure to state a claim. (ECF Nos. 20, 21.)  In a June 10, 2019 report and recommendation, Magistrate Judge Anne Shields recommended that Judge Feuerstein grant in part and deny in part the defendants' motions. (ECF No. 26.)  On September 30, 2019, Judge Feuerstein dismissed all

---

[2] Kalfur, as the complainant, signed for the fence ticket on June 1, 2015, and for the pool ticket on June 29, 2015.  (ECF No. 65, Ex. E at 3, 6.)

3

but two defendants, Vegliante and Kalfur, and all claims except the First Amendment retaliation and abuse of process claims. (ECF No. 37.)

At his deposition on July 28, 2020, Vegliante invoked his Fifth Amendment privilege against self-incrimination, and refused to answer any questions (ECF No. 65, Ex. 5), including whether he played any role in the tickets. (*Id.* at 7-11.) Similarly, Kalfur invoked the Fifth Amendment in his deposition.[3] (ECF No. 65, Ex. 4.) On November 23, 2020, the defendants moved for summary judgment. (ECF No. 65.) At the hearing on September 8, 2021, the Court directed the parties to brief the extent to which Vegliante and Kalfur's invocation of the Fifth Amendment hampered the plaintiff's ability to demonstrate a factual dispute about Vegliante's involvement in the issuance of the tickets.

### a. Evidence Regarding Vegliante's Involvement

Although there is evidence that Vegliante, as mayor, was involved in aspects of the case, there is scant evidence about what if any part Vegliante played in issuing the tickets. (ECF No. 65, Ex. P at 27-30.) When the plaintiff went to the Village Building Department to submit a public records request for her building plans, he was present. (*Id.* at 28.) Vegliante also attended a meeting at the plaintiff's property with her developer, Kalfur and the Village attorney. (*Id.*) The plaintiff "couldn't understand" why Vegliante attended the meeting; she testified that Vegliante showed "animosity" towards her because of her complaints about the Village's lack of compliance with the building code. (ECF No. 65, Ex. P at 167-68.) In a sworn affidavit, Vegliante stated that he was "generally aware" of the work done at the plaintiff's property, and that he attended a meeting with the plaintiff, her engineer and others at which the plaintiff's

---

[3] During Kalfur's deposition, Kalfur's lawyer explained that the New York State Attorney General, the New York State Inspector General and the United States Attorney's Office "are all involved in the criminal investigation concerning" Kalfur and Vegliante, and that both are considered targets facing possible indictment. (ECF No. 65, Ex. 4 at 17-18.)

4

engineer pointed out certain construction deficiencies. (ECF No. 65, Ex. 7 ¶¶ 1-4.) Vegliante also said that he met with the plaintiff's engineer at the "Village office," and the two discussed the plaintiff's developer and the developer's company. (*Id.* ¶ 5).

Vegliante also had a role in the Village's dispute with the Department of State over issues with building codes. Richard Smith, the Department of State official, testified that he met Vegliante, Kalfur and a Village "environmentalist" in connection with the state's investigation into the Village's compliance with building code requirements for counting stories and the installation of propane tanks. (ECF No. 65, Ex. 1 at 35-36, 57-66, 87-88, 155.) Vegliante also corresponded with the Department of State about potential code violations at the plaintiff's property. (ECF No. 65, Ex. 1 at 68-70.) In addition, Smith stated in an email to the plaintiff that the Department of State sent a letter to Vegliante asking for the Village's plan to remedy code violations. (ECF No. 65, Ex. A at 29.) The Village attorney represented that Vegliante was "not aware that the regulations which the New York State Department of State is seeking to enforce in the Village of West Hampton Dunes have been enforced in this manner in any other municipality in New York State." (*Id.* at 35.) Vegliante also sent a letter to Village residents in which he discussed the Department of State's concerns about the placement of propane tanks in the Village. (*Id.* at 32.)

## LEGAL STANDARD

Summary judgment is appropriate only if the parties' submissions, including deposition transcripts, affidavits, or other documentation, show that there is "no genuine dispute as to any material fact," and that the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The movant has the "burden of showing the absence of any genuine dispute as to a material fact." *McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir. 1997); *Tsesarskaya v. City*

*of New York*, 843 F. Supp. 2d 446, 453-54 (S.D.N.Y. 2012) ("While disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment[,] [f]actual disputes that are irrelevant or unnecessary will not be counted." (quoting *Anderson*, 477 U.S. at 248)). "Once the moving party has met this burden, the party opposing summary judgment must identify specific facts and affirmative evidence that contradict those offered by the moving party to demonstrate that there is a genuine issue for trial." *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 349 (E.D.N.Y. 2015) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The non-moving party "may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful." *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998).

In deciding whether summary judgment is appropriate, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party. *See Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010); *Salomon v. Our Lady of Victory Hosp.*, 514 F.3d 217, 226 (2d Cir. 2008).

## DISCUSSION

The defendants argue that the Court should dismiss the plaintiff's case against Vegliante because the plaintiff has not established that he was personally involved in the issuance of the tickets. (ECF No. 68.) The plaintiff responds that the record shows a genuine dispute of material fact about whether Vegliante was personally involved, and that any gaps in the record about his involvement are attributable to the Vegliante's and Kalfur's invocation of the Fifth Amendment. (ECF No. 69.)

To succeed on a First Amendment retaliation claim, the plaintiff must establish, among other elements, that Vegliante played a role in issuing the tickets, that his actions "were

motivated or substantially caused" by the plaintiff's exercise of her First Amendment rights—her complaints and reports about the Village's noncompliance with building codes—and that Vegliante's actions caused her injury. *See Smith v. Campbell*, 782 F.3d 93, 100 (2d Cir. 2015). Similarly, to succeed on an abuse of process claim, the plaintiff must show, among other elements, that Vegliante employed "regularly issued legal process to compel performance or forbearance of some act." *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2003).

In the absence of the defendants' deposition testimony, the record does not establish that Vegliante was personally involved in issuing the tickets. The record shows Kalfur's connection to the tickets: he attended meetings with the plaintiff, told the plaintiff there were no records of her building plan (ECF No. 65, Ex. P at 32), called her about the fence (*id.* at 68), and swore out the two tickets that were issued to the plaintiff. (ECF No. 65, Ex. E at 3, 6.) There is no similar evidence about Vegliante. While he was involved in the Village's dispute with state authorities about building codes, there is nothing connecting him to the tickets.

But the plaintiff was deprived of the opportunity to determine the extent to which Vegliante was involved in issuing the tickets, because the two sources of information on this question—Vegliante and Kalfur—invoked the Fifth Amendment and refused to answer any questions about anything. (ECF No. 65, Exs. 4, 5.)

A court may draw an adverse inference against a party who asserts his Fifth Amendment privilege in a civil matter "because the invocation of the privilege results in a disadvantage to opposing parties by keeping them from obtaining information they could otherwise get." *S.E.C. v. Suman,* 684 F.Supp.2d 378, 386 (S.D.N.Y. 2010) (internal citation omitted); *see also S.E.C. v. Pittsford Cap. Income Partners, L.L.C.,* 2007 WL 2455124, at *14 (W.D.N.Y. Aug. 23, 2007) ("[L]itigants denied discovery based upon an assertion of the privilege may ask the court to draw

7

a negative inference from the invocation of that right."). Moreover, an adverse inference "may be given significant weight because silence when one would be expected to speak is a powerful persuader." *LiButti v. United States,* 107 F.3d 110, 120 (2d Cir. 1997); *United States ex rel. Bilokumsky v. Tod,* 263 U.S. 149, 153-54 (1923) ("Silence is often evidence of the most persuasive character.").

Because both defendants refused to answer questions about Vegliante's involvement in the tickets, or his conversations about the building codes and the plaintiff's property, the plaintiff, as the non-movant, is entitled to the benefit of the doubt. *See Kaytor*, 609 F.3d at 545. I draw an adverse inference against Vegliante regarding his involvement in the issuance of the tickets. *See, e.g.*, *City of New York v. Golden Feather Smoke Shop, Inc.*, No. 08-CV-3966, 2010 WL 2653369, at *11 (E.D.N.Y. June 25, 2010) ("In a civil action, a court may draw an adverse inference against a party who invokes his Fifth Amendment privilege and refuses to answer probative questions."). Under these circumstances, there is a genuine dispute of material fact about Vegliante's role in ticketing the plaintiff. *See, e.g.*, *Bank of Am., N.A. v. Fischer*, 927 F. Supp. 2d 15, 26 (E.D.N.Y. 2013) (stating that on a motion for summary judgment, an adverse inference "must be weighed with other evidence in the matter in determining whether genuine issues of fact exist.").

8

## CONCLUSION

For these reasons, the defendants' motion to dismiss Vegliante as a defendant is denied.

Fed. R. Civ. P. 56(a).

**SO ORDERED.**

                                                    s/Ann M. Donnelly
                                                    ANN M. DONNELLY
                                                    United States District Judge

Dated:  Brooklyn, New York
           September 28, 2021